NORTHWESTERN FINANCIAL GROUP, INC. v. THE COUNTY OF GASTON; DAVID C. BEAM, PORTER McATEER, DAVID R. HOLLIFIELD, C. DAVID WARD, JR., CLAUDE CRAIN, MARY LOU CRAIG, JAMES S. FORRESTER, AS MEMBERS OF THE GASTON COUNTY BOARD OF COMMISSIONERS; THE GASTON PLANNING BOARD, AND WILLIAM M. PATRICK, JACK DILL, GEORGE M. MASON, DAVID E. WATTS, FRANCES SPRINGS, JOHN DYER, W. REGGIE HUNDLEY, AS MEMBERS OF THE GASTON COUNTY PLANNING BOARD

No. 307PA90

(Filed 12 June 1991)

1. **Municipal Corporations § 30.12 (NCI3d) — construction of mobile home park — ordinance in effect at time of application governing**

    Plaintiff developer which applied for a construction permit under a county ordinance which prescribed the procedures for obtaining a construction and operating permit for a mobile home park had a right to have its application reviewed under the terms of the ordinance in effect at the time the application for the permit was made.

    **Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps § 13; Zoning and Planning § 10.**

    **Retroactive effect of zoning regulation, in absence of saving clause, on pending application for building permit. 50 ALR3d 596.**

    **Validity and application of zoning regulations relating to mobile home or trailer parks. 42 ALR3d 598.**

2. **Municipal Corporations § 30.12 (NCI3d) — review of mobile home park plan — applicable ordinance — no waiver of right by developer**

    Plaintiff developer did not waive or abandon its right to have its mobile home park plan reviewed under the ordinance in effect at the time the plan was submitted, since plaintiff submitted revised plans in response to modifications

recommended by a regulatory agency and proceeded in good faith and without excessive delay to comply with the requirements of the 1986 ordinance.

**Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps § 13; Zoning and Planning § 10.**

**Retroactive effect of zoning regulation, in absence of saving clause, on pending application for building permit. 50 ALR3d 596.**

**Validity and application of zoning regulations relating to mobile home or trailer parks. 42 ALR3d 598.**

3. **Municipal Corporations § 30.12 (NCI3d) — construction permit for mobile home park — no denial on basis of hazard to public welfare**

Defendant county's ordinance prescribing the procedures for obtaining a construction and operating permit for a mobile home park provided for a permit by right upon compliance with the terms of the ordinance, and such permit could not be denied on the basis that it was a hazard to the public welfare.

**Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps § 13.**

**Validity and application of zoning regulations relating to mobile home or trailer parks. 42 ALR3d 598.**

ON appeal as of right pursuant to N.C.G.S. § 7A-30(1) and on discretionary review pursuant to N.C.G.S. § 7A-31 of an unpublished opinion of the Court of Appeals, 98 N.C. App. 515, 391 S.E.2d 864 (1990), setting aside the judgment in favor of plaintiff entered by *Owens, J.,* in the Superior Court, GASTON County, on 19 December 1988. Heard in the Supreme Court 12 February 1991.

*Weinstein & Sturges, P.A., by T. LaFontine Odom, William H. Sturges, and Thomas L. Odom, Jr., for plaintiff-appellant.*

*Stott, Hollowell, Palmer & Windham, by Grady B. Stott and Aaron E. Bradshaw, for defendant-appellees.*

MEYER, Justice.

The issue which we must resolve in this case is whether the plaintiff-developer which applied for a construction permit under

a county ordinance that prescribed the procedures for obtaining a construction and operating permit of a mobile home park has a right to have its application reviewed under the terms of the ordinance in effect at the time the application for the permit was made. A second issue we must resolve is whether the plaintiff-developer's subsequent submission of revised plans for such mobile home park waived or abandoned any rights which might have vested pursuant to the filing of the original application and the consequences that result from such a determination.

Gaston County (hereinafter "the County") has no comprehensive zoning ordinance. Effective 1 July 1986, the Gaston County Board of Commissioners adopted an ordinance entitled "Mobile Home Park Ordinances" (hereinafter "the 1986 ordinance"), which prescribed a mandatory procedure for securing approval of mobile home parks and applied to any mobile home park proposed after its effective date. The Board of Commissioners revised the mobile home park ordinance effective 24 September 1987 (hereinafter "the 1987 ordinance"), decreasing the density allowed in mobile home parks and adding the requirement that all roads in mobile home parks be paved. This amended 24 September 1987 ordinance provided in pertinent part that "[t]he provisions of the Gaston County Mobile Home Park Ordinance Dated July 1, 1986, shall apply to those . . . plans . . . submitted to the Gaston County Division of Planning after July 1, 1986 and prior to the effective date of this ordinance."

The plaintiff, Northwestern Financial Group, Inc. (hereinafter "Northwestern"), submitted a plan for a mobile home park on 5 June 1987 (hereinafter "the first plan"). This plan provided for a total of 187 mobile home spaces. The plan was submitted to the proper reviewing agencies, and numerous deficiencies were pointed out. The plan came on before the 22 June 1987 regular meeting of the Gaston County Planning Board, and the consideration of the plan was tabled with the exception of preliminary conditional approval of the road layout. The motion which was adopted was "to conditionally approve the road design only, with the lot layout and sewage disposal being tabled until a later meeting." The Planning Board tabled consideration of the plan pending a determination by the State of North Carolina on the plaintiff's application for a sewage treatment plant.

By letter dated 24 June 1987, the administrator of the Division of Planning notified Northwestern that the Board's action was "con-

ditional approval on the road design only which would allow for the construction of roads in accordance with the approved plans having the following conditions met prior to construction." The letter also informed Northwestern that "[a]ny construction work conducted by your group prior to final approval by the Planning Board will be at your risk, and subject to change in accordance with consideration of requested information." The original plans submitted by the plaintiff called for individual septic tanks on each lot in the plaintiff's mobile home park. Subsequently, however, the Gaston County Health Department determined that the land was not suitable for septic tanks, and Northwestern proposed a change in its plans to use a package sewage treatment plant.

On 21 September 1987, three days prior to the effective date of the 1987 ordinance, Northwestern submitted a revised plan (hereinafter "the second plan"), which called for 244 spaces, or 57 more spaces than the first plan. It also contained a change in the road design to accommodate the additional spaces made possible by the use of a sewage treatment plant rather than in-dividual lot septic tanks. The second plan was the last plan submit-ted prior to the effective date of the 1987 ordinance.

On 23 February 1988, well after adoption of the 1987 ordinance, Northwestern submitted a third set of plans (hereinafter "the third plan"). Based on suggestions by the Gaston County Soil and Water Conservation District, the third plan contained a total of 272 spaces, 28 more than the second plan. Upon initial review of this plan, Northwestern was notified that this plan constituted a major change in the second plan and would therefore have to be considered under the 1987 ordinance. This letter stated in pertinent part:

> With the road changes, and since the additional spaces were worked into the plan and not treated as an additional section to be reviewed under the September 1987 ordinance, the plans submitted on February 23, 1988 will be considered under the September 1987 ordinance. In a review of the plans under the guidelines of this ordinance, the plan is disapproved due to the space size not meeting the minimums set in the ordinance.

This third plan was withdrawn by Northwestern with the consent of the Planning Director.

On 2 March 1988, the plaintiff submitted its fourth set of plans (hereinafter "the fourth plan"), which increased the size of

the spaces and contained 244 spaces. The fourth plan, a revision of the second plan, was reviewed by the Division of Planning and underwent numerous reviews by the various consulting agencies, including the North Carolina Department of Transportation, the Gaston County Health Department, the Gaston County Inspection Department, the Gaston Soil and Water Conservation District, and the Gaston County Engineering Department. Under the 1986 ordinance, the consulting agencies review an applicant's plan for compliance with the agency's regulations and thereafter advise the Division of Planning of Gaston County of their approval, conditional approval, or disapproval of the proposed park plan.

The fourth plan submitted by Northwestern was originally scheduled for review by the Planning Board at its 25 April 1988 meeting. However, this meeting was continued at the request of Northwestern's attorney because all referring agency approval had not been obtained.

On 23 May 1988, the Planning Board met, and Northwestern's mobile home park plan was reviewed. As of that date, the consulting agencies had reported the following:

(a) The County Health Department reported that on 14 April 1988, Northwestern received a National Pollutant Discharge Elimination System permit ("NPDES permit") from the State of North Carolina for a package treatment plant for the mobile home park to discharge waste water. The wells for the water distribution system for the mobile home park had only recently been completed, and the Health Department had not completed a review of the water distribution system.

(b) On 15 April 1988, Northwestern received a North Carolina Department of Transportation driveway permit.

(c) On 5 May 1988, the Gaston County Inspection Department issued an erosion and sediment control grading permit to Northwestern.

(d) On 17 May 1988, the Gaston Soil and Water Conservation District recommended the mobile home park for conditional approval.

(e) In an undated document, the Gaston County Engineering Department approved the mobile home park plan.

(f) Donald Bailey, County Engineer, approved the flood plain designation.

As of 23 May 1988, Northwestern had obtained the foregoing approvals by all consulting agencies for this stage of development.

The Planning Board voted to disapprove the proposed park plans "due to the development being a hazard to the public welfare, and that any proposed plans would have to be in accordance with the September 23, 1987 Mobile Home Park Ordinance adopted by the Board of Commissioners."

On 15 June 1988, Northwestern attempted to submit a fifth set of plans for the mobile home park. This fifth set of plans called for 244 units and was presented over the signature of a registered engineer. The Division of Planning refused to accept these plans for consideration under the 1986 ordinance but offered to accept the plans for consideration under the 1987 ordinance. Northwestern did not wish to submit the plans under the 1987 ordinance; therefore, the plans were not accepted by the Division of Planning.

Northwestern appealed the Planning Board's action to the Board of Commissioners after the Planning Board refused to accept its mobile home park plan under the 1986 ordinance.

The Gaston County Board of Commissioners, at its 28 July 1988 meeting, affirmed the Planning Board's denial of the permit and ruled that future plans submitted by Northwestern must comply with the 1987 ordinance. Prior to Northwestern's application, Gaston County had never denied an application for a construction permit and had never considered the "general public welfare" when reviewing mobile home park applications.

On 26 August 1988, Northwestern filed this suit contending, among other things, that the actions by the Planning Board and County Commissioners were arbitrary and unwarranted and that the Planning Board's actions deprived it of equal protection under the law of the land clause of article I, section 19 of the North Carolina Constitution and the fourteenth amendment of the United States Constitution. Northwestern sought to require that its application be considered on the basis of the 1986 ordinance. It asked for a preliminary mandatory injunction for (1) the issuance of a conditional construction permit, (2) advice as to requirements necessary to receive a permanent construction permit, and (3) is-

suance of a permanent construction permit upon Northwestern's compliance with the above.

A preliminary mandatory injunction was granted to Northwestern on 22 September 1988 by Burroughs, J., who set the case for hearing at the 28 November 1988 civil term upon a motion for summary judgment to be filed within ten days of his order. In granting injunctions in favor of the plaintiff, Northwestern, the trial judge found that Gaston County's denial of the construction permit was an unconstitutional delegation of legislative power in violation of article II, section 1 of the North Carolina Constitution; was in violation of their own mobile home park ordinances; was improper because Northwestern was not given a fair hearing; and was a denial of due process and equal protection of the law in violation of article I, section 19 of the North Carolina Constitution and the fourteenth amendment of the United States Constitution. After a hearing on 28 November 1988 on Northwestern's motion for summary judgment, Owens, J., on 19 December 1988, entered a judgment in favor of Northwestern granting a permanent mandatory injunction against the County, requiring that a permit be issued upon compliance with the 1986 ordinance.

The Court of Appeals reversed and granted summary judgment for the County in an unpublished opinion which indicated that Northwestern's plan, submitted after the passage of the new ordinance, did not "relate back" to the plan submitted under the 1986 ordinance. After a petition for rehearing was denied, Northwestern filed a notice of appeal and a petition for discretionary review, which this Court granted on 29 August 1990.

I.

[1] We must first consider what, if any, rights Northwestern has in having its mobile home park application evaluated under the 1986 ordinance. The record indicates that the defendants reviewed Northwestern's plans under the 1986 version of the ordinance. Defendants contend that the 1987 ordinance applied and that even if the 1986 ordinance applied, Northwestern waived or abandoned its rights to review under that ordinance through the submission of revised plans.

The 1986 ordinance provides in pertinent part: "On or after July 1, 1986, these regulations shall govern each and every mobile home park or any addition or expansion of an existing mobile home

park, as defined by this ordinance . . . ." The later 1987 ordinance provides: "The provisions of the [1986 ordinance] shall apply to . . . plans . . . *submitted* to the Gaston County Division of Planning after July 1, 1986 and prior to the effective date of this ordinance." (Emphasis added.) The effective date of the new ordinance was 24 September 1987. The new ordinance unequivocally indicates that the 1986 ordinance applies to all plans *submitted* prior to 24 September 1987.

The record before us reveals that Northwestern's plan was reviewed under the provisions of the 1986 ordinance. Judge Burroughs found as a fact that the plan was reviewed under the 1986 ordinance, and the County did not except to this finding. The 23 May 1988 Planning Board minutes reveal that the plan being reviewed was the plan submitted 21 September 1987, which was prior to the effective date of the 1987 ordinance (24 September 1987).

> The Planning Director stated that the plan under review was the one submitted on September 21, 1987, as revised . . . .
>
>      . . . .
>
>      . . . Mr. Watts moved that the Board rescind the conditional approval of the park and to disapprove the proposed park plans due to the development being a hazard to the public welfare, and that any proposed plans would have to be in accordance with the September 23, 1987 Mobile Home Park Ordinance . . . .

By its very terms, the 1987 ordinance would not apply because, as we have previously noted, the 24 September 1987 ordinance provided that "[t]he provisions of the Gaston County Mobile Home Park Ordinance Dated July 1, 1986, shall apply to those . . . plans . . . submitted to the Gaston County Division of Planning after July 1, 1986 and prior to the effective date of this ordinance" (24 September 1987).

The Planning Board minutes of 28 September 1987 state that "the developers of Crowders Mountain MHP and Tryon MHP had submitted revised proposals . . . [and] that both plans were submitted prior to the new ordinance being effective and were being reviewed under the 1986 ordinance." The agencies that reviewed Northwestern's plan prior to the 23 May 1988 Planning Board

meeting are the ones enumerated under the 1986 ordinance, not the 1987 ordinance.

Indeed, the Gaston County Planning Director testified that the plan was reviewed under the 1986 ordinance. Furthermore, the reason the Planning Board disapproved the plan had nothing to do with its compliance or noncompliance with the 1986 ordinance. The plan was disapproved "due to the development being a hazard to the public welfare."

Clearly, Northwestern established a right of review under the 1986 ordinance with the submission of plans both on 5 June 1987 (the first plan) and on 21 September 1987 (the second plan)[1] unless that right was waived subsequent to those filings.

Since we hold that the 1986 ordinance applies to Northwestern's application and that Northwestern is entitled to a permit for the construction of the mobile home park in accord with Judge Owens' judgment of 19 December 1988, we need not address the issues Northwestern asserts based on the federal and state Constitutions.

## II.

[2] Having decided that Northwestern is entitled to have its application reviewed under the 1986 ordinance, we must next determine whether Northwestern waived that right by affirmative acts, that is, by abandonment of the first plans through the submission of the other revised plans, or by a failure to act, that is, the passage of time.

The Court of Appeals held that the revised plans submitted after the enactment of the new ordinance did not "relate back" to plans submitted prior to the enactment of that ordinance. We do not agree. We conceive the issue to be not so much whether the plans relate back, as it is whether the submission of the subsequent revised plans in response to the requirements or recom-

---

1. Defendants, in their brief to this Court, contend that Northwestern was not properly incorporated at the time of the submission of its application. The County contends that it was dealing with a nonentity at the time the first applications were filed, and therefore, Northwestern could not establish a right to review under the 1986 ordinance. However, the defendants filed no response to Northwestern's petition for discretionary review, and since that issue and others were not raised by the County in response to the plaintiff's petition for discretionary review, they were not preserved for review and are deemed abandoned pursuant to North Carolina Appellate Rules 15(d) and 16(a).

mendations of regulatory bodies resulted in a waiver or abandonment of Northwestern's right to review under the 1986 ordinance. The more pertinent inquiry as to whether such right is waived or abandoned is through examination of the question of whether the subsequent plans were made in a good faith effort to bring its application into compliance with the 1986 ordinance. We hold, based on the findings by the trial court, which are amply supported by the evidence, that Northwestern submitted the revised plans in response to the modifications recommended by a regulatory agency, proceeded in good faith to comply with the requirements of the 1986 ordinance, and did not waive or abandon its right to review under that ordinance. The revised plans were essentially a part of the normal give and take between the applicant and the regulatory authorities.

Defendants contend that the submission of the third plan, which contained an additional twenty-eight spaces, constituted a material change from the previous two plans submitted and indicated an abandonment by Northwestern of those earlier plans. We disagree. The third plan was merely a revision of the second plan based on suggestions from the Gaston County Soil and Water Conservation District and was subsequently withdrawn.

Defendants note that two of the applications submitted after the enactment of the new ordinance did not have an engineer's seal and that one of the plans submitted did not have an approval of the water system prior to its submission to the Planning Board as required by the 1986 ordinance.

Judge Burroughs found as a fact that the first plan was prepared by a licensed engineer, and this finding was not excepted to by the County. The 1986 ordinance was complied with. While it is true that a later revision, unknown to Northwestern, was not signed by a registered engineer, that omission was remedied when Northwestern later submitted the very same plan signed by a registered engineer, although it was not accepted by the County. Furthermore, as previously indicated, the lack of a proper signature had nothing to do with the reason expressed by the County for its disapproval. The minutes of the Planning Board of 23 May 1988 do not indicate that the matter was even discussed.

As to the lack of approval of the water system prior to its submission to the Planning Board, it is clear from the record before us that Gaston County's usual practice is to grant permits upon

condition that the approval be later obtained. The Director of the Planning Department testified that the usual procedure of the Planning Board is to grant construction permits prior to approval of the water system. The record reflects that this procedure was followed with regard to a number of other mobile home park plans considered and approved by the Planning Board. The reason for this practice is that the water system cannot be designed until wells are drilled, which occurs after the plans are approved. Judge Owens' order in this case requiring the issuance of a construction permit contemplates that the requirement of an approval of the water system will be satisfied as a condition subsequent to the issuance of the construction permit.

The 1986 ordinance contemplates that the County through the Planning Board and the reviewing agencies will tell the applicant what is needed to correct its application. Good faith efforts to comply with the recommendations of the reviewing agencies should not prejudice the applicant. There was no evidence of bad faith on the part of Northwestern in submitting revised plans or of an excessive delay in attempting to comply with the 1986 ordinance. We therefore hold that Northwestern did not waive or abandon its right to have its mobile home park plan reviewed under the ordinance in effect at the time the plan was submitted.

## III.

[3] Defendants apparently concede, despite language in the ordinance to the contrary, that the plan could not properly be rejected on the basis that a permit would be "a hazard to the public welfare." We agree. We note the fact that Gaston County has no comprehensive zoning ordinance. Even where an overall zoning ordinance applies, we have held that an activity allowed within a designated zone may not be denied on the basis that it is a hazard to the public welfare. See *Woodhouse v. Board of Commissioners*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980) (quoting 3 A. Rathkopf, *Law of Zoning and Planning* 54-5 (1979)) (" 'The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district.' "); *In re Application of Ellis*, 277 N.C. 419, 178 S.E.2d 77 (1970) (municipality must limit review to facts and conditions detailed in the ordinance and may not deny a permit because it adversely affects the public interest).

In conclusion, upon Northwestern's application for a permit, the ordinance at issue here specifically granted it a right of review under the terms of the 1986 ordinance. We hold that Northwestern promptly proceeded in good faith to meet the requirements of the 1986 ordinance and did not waive or abandon its right of review under the terms of the 1986 ordinance pursuant to which its application was filed. Finally, the County's ordinance provides for a permit by right upon compliance with the terms of the ordinance, and such permit may not be denied on the basis that it is a hazard to the public welfare.

Thus, we reverse the Court of Appeals and remand this case to that court for further remand to the Superior Court, Gaston County, for reinstatement of the judgment entered by Owens, J., on 19 December 1988.

Reversed.